## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
                                   :
      v.                              :   **3:24-CR-90**
                                   :   **(JUDGE MARIANI)**
JAMIE SMICHERKO,                   :
PATRICK RUSSIN,                    :
RYAN MEDAR, and                    :
CARLOS LAUREL,                     :
                                   :
      Defendants.                  :

**FILED
SCRANTON**

NOV 1 8 2024

PER_____
DEPUTY CLERK

### MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are Defendant Patrick Russin's Motion for Bill of Particulars and, in the alternative, Motion to Dismiss Indictment (Doc. 106), Defendant Carlos Laurel's Motion for Bill of Particulars (Doc. 102), and Defendant Laurel's Motion for *Starks* Hearing (Doc. 99).

On April 9, 2024, a federal grand jury returned a 17-count Indictment against Defendants Jamie Smicherko, Patrick Russin, Ryan Medar, and Carlos Laurel. As relevant to the present pending pre-trial motions, all defendants, including Laurel and Russin, were charged with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count 1), and Defendant Russin was further charged with two counts of Distribution of Cocaine (Counts 14, 15) and one count of Distribution of Methamphetamine (Count 16), all in violation of 21 U.S.C. § 841(a)(1).

Trial in the above-captioned action was scheduled to commence on June 3, 2024. (*See* Docs. 38, 39, 40, 59). Following several extensions of time, the time for the filing of pre-trial motions expired on October 10, 2024. Defendants Laurel and Russin filed the afore-stated motions for a bill of particulars and motion for a *Starks* hearing.[1] Defendants Smicherko and Medar did not file any pre-trial motions.

For the reasons that follow, Defendants' Motions (Docs. 99, 102, 106) will be denied.

## II. ANALYSIS

### A. Bill of Particulars

Both Russin and Laurel request that this Court direct the Government to file a bill of particulars (Docs. 102, 106). In the alternative, Russin requests that the Court dismiss the indictment against him. (Doc. 106). Because Defendants' motions raise similar arguments and request substantially the same relief, the Court will address them together.

Federal Rule of Criminal Procedure 7 provides in relevant part that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The rule further provides that "[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). "The purpose of the bill of particulars is to inform the

---

[1] Defendant Laurel also filed a Motion in Limine to Preclude Statements Attributed to Defendant (Doc. 104). Defendant's *in limine* motion will be addressed separately following the expiration of the time to file motions *in limine*, which will be set in this Court's separate trial scheduling order.

defendant of the nature of the charges brought against him to adequately prepare his defense. . . ." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971). "A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.'" *Id.* at 64 (quoting *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)). However, a bill of particulars is not designed to inquire into the legal or evidentiary support proffered by the Government with regard to whether a defendant committed a specific criminal act. *See United States v. Leonelli*, 428 F.Supp. 880 (S.D.N.Y. 1977). "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). Notably, it has long been "firmly established" that "a defendant is entitled neither to a wholesale discovery of the Government's evidence . . . nor to a list of the Government's prospective witnesses." *Addonizio*, 451 F.2d at 64.

"An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. An indictment must allege more than just the essential elements of the offense." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (internal citations and quotation marks omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy"

3

and thus an indictment will generally "satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012), *abrogated on other grounds by United States v. Hill*, 98 F.4th 473 (3d Cir. 2024) (internal citations and quotation marks omitted).

In addition, "[t]he Third Circuit has . . . emphasized that the need for a bill of particulars is obviated in those cases where the Government supplements a detailed charging document with substantial discovery. In ruling on a request for a bill of particulars, the court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment." *United States v. Hayes*, 2007 WL 3085998, *1 (M.D.Pa. 2007) (citing *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2004); *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972)).

"[T]he granting of a bill of particulars remains a discretionary matter with the trial court." *Addonizio*, 451 F.2d at 64. "The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id. See also*, *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) ("trial judges must be allowed to exercise broad discretion in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging

4

from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so.").

Here, Defendant Russin asserts that, with respect to the conspiracy set forth in Count 1, he "is entitled to know the identity of the 'other' alleged conspirators and participants to the extent the Government is able to identify such people." (Doc. 107, at 3). Defendant Russin further argues that he must "be apprised of the time frame the conspiracy is alleged to have covered; the time frame for his participation in the conspiracy; and the dates that the alleged acts in furtherance of the conspiracy took place", asserting that the six month period of time set forth in Count 1 of the Indictment is "too broad to satisfy Rule 7(f). . ." (Doc. 107, at 4).  In turn, with respect to Count 1 of the Indictment, Defendant Laurel asserts that the Government must file a bill of particulars to include (1) the amount of cocaine attributed to Defendant Laurel as part of his role in the alleged conspiracy and (2) any and all separate instances attributed to Defendant as part of his role in the alleged conspiracy, the specific amounts distributed by Laurel, and the dates the instances of distribution by Laurel occurred.  (Doc. 102, ¶ 3).

Despite the parties' assertions to the contrary, the Indictment is sufficient to inform the defendants of the nature of the charges brought against them and to adequately prepare their defenses.

Here, Count I of the Indictment, alleging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, adequately sets forth the required elements under 21 U.S.C. §§ 841 and 846 and provides "sufficient factual orientation" to apprise Defendants of the charge and allow them to prepare their defenses.  The Indictment largely tracks the language of §§ 841 and 846, alleging that the defendants "knowingly, intentionally, and unlawfully, combine[d], conspire[d], confederate[d] and agree[d] with each other and with other persons known and unknown . . . to knowingly, intentionally, and unlawfully distribute and possess with intent to distribute controlled substances."  (Doc. 1, at 1-2).  As to Count 1, the Indictment attributes to Russin an amount "in excess of 50 grams of a mixture and substance containing a detectable amount of methamphetamine and an unspecified amount of cocaine" and attributes to Laurel "an unspecified amount of cocaine" (*Id.* at 2).  Count I also includes the necessary "factual orientation" by specifying the time period during which the alleged violation occurred (October 25, 2023 to April 4, 2024) as well as the substances involved and, as to Russin, the quantity of those substances for which he is allegedly responsible.  *See e.g. Huet*, 665 F.3d at 596 (finding indictment charging violations of 18 U.S.C. § 922 included "the required 'factual orientation'" where it specified the time period during which violation occurred and identified specific weapon involved).

Russin's argument that he is entitled to know the identities of any other alleged conspirators is without merit.  An indictment itself need not contain the names or identities of

the co-conspirators, so long as the indictment and subsequent discovery provide the

defendant with the necessary information for him to adequately prepare his case, avoid

surprise at trial, or to avoid the later risk of double jeopardy.  *See United States v. Sampson*,

2012 WL 214707, at *2 (M.D.Pa. 2012) ("'Courts have been highly reluctant to require a bill

of particulars when defendants have asked for specific identities of coconspirators or others

allegedly involved.  So long ... [as] an indictment and discovery sufficiently enables

defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted.'")

(quoting *United States v. Coffey,* 361 F.Supp.2d 102, 122 (E.D.N.Y.2005) (collecting

cases)).  *See also United States v. Crayton,* 357 F.3d 560, 568 (6th Cir.2004) ("[T]he

Government is not required to furnish the name of all other co-conspirators in a bill of

particulars.").

　　　Russin is also not entitled to a bill of particulars to further specify the time frame of

his alleged participation in the conspiracy within the 6-month period set forth in the

Indictment and the specific dates on which the alleged acts in furtherance of the conspiracy

took place.  Such a request is "tantamount to a discovery request" and an impermissible use

of a bill of particulars.  *United States v. Butler*, 2019 WL 2409052, * 5 (M.D.Pa. 2019).  *See*

*also, United States v. Cheatham*, 500 F. Supp. 2d 528, 533 (W.D. Pa. 2007) ("[Defendant's]

request for the 'date, time and place when the conspiracy began' also will be denied.  A

defendant charged with conspiracy cannot use a bill of particulars to obtain the 'exact date'

he entered into the conspiracy." (citing *United States v. DiCesare*, 765 F.2d 890, 897-898

(9th Cir.1985); *United States v. Urso*, 369 F.Supp.2d 254, 272 (E.D.N.Y.2005)).  In addition, Counts 14, 15, and 16, alleging distribution of cocaine (Counts 14, 15) and methamphetamine (Count 16) by Russin on March 26, 2024 (Count 14), March 28, 2024 (Count 15), and March 31, 2024 (Count 16), all fall within the time frame of the alleged conspiracy in Count 1, and provide Defendant Russin with, at minimum, several of the dates that the alleged acts in furtherance of the conspiracy took place.

Similarly, Laurel's assertion that he is entitled to a bill of particulars specifying the amount of cocaine specifically attributed to him as part of his role in the alleged conspiracy as a whole and any and all instances of distribution, including the dates and times, attributed to him as part of his role in the alleged conspiracy must fail.  As previously explained, "no greater specificity than the statutory language is required [in the Indictment] so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy", *Huet*, 665 F.3d at 595.  Here, Laurel's request for specific dates/times on which he allegedly distributed a controlled substance, and the specific amounts of cocaine or any other controlled substance attributed to him, goes far beyond the permitted purposes of a bill of particulars and amounts to a request for specific discovery. Additionally, as more fully discussed, *infra*, the Government has provided Defendants, including Laurel, with extensive discovery, lessening any alleged impairment by Laurel to prepare for trial or to experience any prejudicial surprise at trial.

Furthermore, and of note, Laurel is only charged with *conspiracy* to distribute and possess with intent to distribute controlled substances. Laurel need not have been present at one or more of the alleged drug distributions in order to be found liable for participating in the conspiracy pursuant to 21 U.S.C. § 846. To prove a conspiracy, the Government must "establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal," *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). "Since conspiracy is a continuing offense, . . . a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, . . . and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot. . ." *Smith v. United States*, 568 U.S. 106, 111 (2013) (internal quotation marks, brackets, and citations omitted). As a result, "[t]he government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants." *Gibbs*, 190 F.3d at 197. Here, inherent in Defendant Laurel's premise that he needs the dates and times of any distribution of drugs in which he allegedly participated, and the amount of the substances at issue, is that he could not have participated in the overall conspiracy if he were not present for one or more of the alleged drug transactions. Laurel's participation, or lack thereof, in a specific drug transaction is not, by itself, any evidence that would tend to show a lack of participation in a conspiracy (or withdrawal from the conspiracy).

To the extent that Russin and Laurel's arguments amount to assertions that they are entitled to a recitation of any overt acts taken in furtherance of the conspiracy, the absence of this information also does not render an indictment insufficient. As explained in *United States v. Sampson*,

> The conspiracy provision of the Controlled Substances Act does not require an indictment to recite any overt acts taken in furtherance of the conspiracy. 21 U.S.C. § 846. Further, the United States Supreme Court has held that proof of "the commission of any overt acts in furtherance of the conspiracy" is not required for a conviction under § 846. *United States v. Shabani,* 513 U.S. 10, 15, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). Thus, an indictment under § 846 is sufficient if it alleges "a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific act in furtherance of the conspiracy." *United States v. Sweeney,* 688 F.2d 1131, 1140 (7th Cir.1982).

2012 WL 214707 at *2. *See also*, *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975) (Defendant's "request for the 'when, where and how' of any overt acts not alleged in the indictment was tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not the purpose of a bill of particulars under Fed.R.Crim.P. 7(f).").

Defendant Russin also requests a bill of particulars as to Counts 14, 15, and 16, charging Russin with distribution of controlled substances. With respect to these three counts, Russin argues that "the Government must provide the identification of those of whom the Defendant distributed drugs" because "[w]ithout more specificity, the Defendant's ability to prepare a defense to the allegations set forth in the Indictment are compromised and potentially prejudiced." (Doc. 107, at 4).

Once again, Defendant Russin's request for a bill of particulars impermissibly constitutes a request for a discovery.  For substantially the same reasons that Russin is not entitled to the names of his unindicted co-conspirators, he is also not entitled to obtain the identification of all of those to whom he allegedly sold drugs through a request for a bill of particulars.  Here, Counts 14, 15, and 16, alleging Distribution of Cocaine (Counts 14, 15) and Methamphetamine (Count 16), adequately set forth the required elements under 21 U.S.C. § 841 and provide Defendant with the necessary "sufficient factual orientation." Mirroring the language of § 841(a), Counts 14, 15, and 16, allege that Russin "knowingly and intentionally distribute[d] and possess[ed] with intent to distribute" cocaine and methamphetamine (Doc. 1, at 11-13).  Each count further alleges the specific date of the violation, that each violation occurred in Luzerne County, Pennsylvania, and that the controlled substance at issue was cocaine (Counts 14, 15) and methamphetamine (Count 16), providing Russin with the requisite factual orientation to prepare his defense.  Count 16 of the Indictment also clearly alleges Defendant's prior conviction for a serious violent felony, setting forth his prior state court conviction for Robbery, in violation of 18 Pa. C.S.A. § 3701(a)(1)(ii).  (Doc. 1, at 13).

Additionally, with respect to both Russin and Laurel's motions as to the necessity of a bill of particulars, as the Government explains, and neither Defendant disputes, "ample discovery" has been "turned over or made available for inspection by the defendant or his attorney" (Doc. 118, at 27; *see also*, Doc. 115, at 26).

>These disclosed or available materials include the police reports regarding the above-described firearm and drug sales, the audio/visual recordings of those sales, photographs from the execution of numerous search warrants, several laboratory reports from those sales, and the electronic communications made between the defendant, his co-conspirators, and a confidential informant.

(Doc. 118, at 27) (*see also*, Doc. 115, at 27 (same)).

The "ample discovery" provided by the Government serves to contradict Defendants' claims that a bill of particulars is necessary for the preparation of a proper defense or to avoid prejudice.  The discovery provided by the Government has necessarily informed the defendants of the identities of, at minimum, some of their co-conspirators as well as at, minimum, some of those to whom controlled substances were distributed.  The discovery has further provided additional specificity as to the locations and dates and times of the drug distributions, as well as the specific substances, and quantities, distributed by a defendant or co-conspirator.

Thus, as demonstrated by the record, Russin and Laurel have each been apprised of the charge(s) against him and know the nature of the offense(s) that were allegedly committed within a specific time frame or on a specific date.  Neither Defendant has established the specific need for a bill of particulars that the law requires for its issuance. This is particularly the case in light of the Government's stated disclosure of extensive discovery related to the counts against Russin and Laurel in the Indictment, which serve to further inform the defendants of the nature of the charge(s) brought against them and aid them in their ability to adequately prepare a defense.

For these reasons, Defendants Russin and Laurel's motions for a bill of particulars will be denied.

Finally, Defendant Russin also moves for dismissal of the Indictment. Although the basis for Russin's argument is not clearly explained, to the extent that Russin is requesting that the Court dismiss the Indictment due to its alleged insufficiency, such motion must fail for the same reasons previously set forth herein. As previously quoted, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A Court will "consider an indictment sufficient if, when considered in its entirety, it adequately informs the defendant of the charges against [him] such that [he] may prepare a defense and invoke the double jeopardy clause when appropriate." *United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002). Here, as this Court has explained, the Indictment informs Russin of the statutes he is charged with violating, the elements of the violation of those statutes, and the time period during which the conspiracy occurred in Count 1 and the dates on which the violations occurred in Counts 14, 15, and 16, as well as the controlled substances at issue. The Indictment is therefore sufficient under Rule 7(c)(1). *See e.g. Urban*, 404 F.3d at 771 (the indictment "more than adequately informed [Defendants] of the charges leveled against them, and enabled them to prepare their defense and, if applicable, invoke the double jeopardy clause" where it "informed [Defendants] of the statute they were charged with violating, the

13

elements of a violation of that statute, the persons or businesses victimized, and the time period during which the payments were made.").

## B. Motion for *Starks* Hearing

In addition to moving for a bill of particulars (Doc. 102), Defendant Laurel filed a "Motion for Starks Hearing to Preclude Use of Audio Recordings at Trial." (Doc. 99).

Laurel explains that while investigating this case, "the Government is believed to have used a confidential informant to communicate by phone with various individuals including Defendant and recorded those communications/conversations" and the Government "contends that it has audio recordings of Defendant with a confidential informant." (Doc. 99, ¶¶ 2, 3). Laurel asserts that "[t]he Government provided to Defense Counsel a computer recording of audio purporting to involve Defendant and others in audio intercepts" but that while the "[t]he audio recordings depict persons speaking . . . the audibility, the intelligibility and understanding of the words spoken are not clear as evidence as well as the identity of persons speaking." (*Id.* at ¶¶ 4, 5). Defendant Laurel thus requests a hearing pursuant to *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975), with additional reference to Federal Rule of Evidence 901(a), before the audio recordings at issue are offered into evidence at trial.

In 1975, the Third Circuit explained in *Starks* that prior to the admission of a tape recording, "a foundation must be established by showing" seven facts, specifically:

(1) That the recording device was capable of taking the conversation now offered in evidence.

14

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording had been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Starks*, 515 F.2d at 121 (quoting *United States v. McKeever*, 169 F.Supp. 426, 430

(S.D.N.Y. 1958)). The Court nonetheless acknowledged that "it is difficult to lay down a

uniform standard equally applicable to all cases." *Id*. Pursuant to *Starks*, the Government

bears the burden of producing "clear and convincing evidence of authenticity and accuracy

as a foundation for the admission of [the] recordings", *id*. (quoting *United States v. Knohl*,

379 F.2d 427, 440 (2d Cir. 1967)).

However, as recently explained:

the Federal Rules of Evidence, adopted shortly after *Starks*, establish a different, lower standard for authentication. Under Rule 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Questions of authentication under Rule 901 are treated "as matters of conditional relevance according to the standards of Rule 104(b)," which can be satisfied under the "preponderance of the evidence standard." *See United States v. Browne*, 834 F.3d 403, 433-34 (3d Cir. 2016). The "preponderance of the evidence" standard requires only a showing "that the fact sought to be proved is more probable than not," as opposed to the "clear and convincing evidence" standard which requires that a proponent show that "the truth of its factual contentions [is] highly probable." *See Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 159 (3d Cir. 2013); *Greenwich Collieries v. Dir., Off. of Workers' Comp. Programs*, 990 F.2d 730, 733 (3d Cir. 1993).

*United States v. Dubose*, 639 F. Supp. 3d 503, 511 (E.D. Pa. 2022).

15

As a result of the differing standards for authentication, the Third Circuit has repeatedly recognized that "[i]t is unclear whether *Starks* remains relevant after the enactment of Fed. R. Evid. 901." *United States v. Than Le*, 542 F.App'x 108, 117 n.8 (3d Cir. 2013). *See also*, *United States v. Toler*, 444 F.App'x 561, 564 n.1 (3d Cir. 2011) ("acknowledg[ing] the Government's argument that *Starks* was abrogated by Federal Rule of Evidence 901(a), which requires a lesser showing to authenticate evidence" but declining to "comment on the relationship between *Starks* and Rule 901"); *United States v. Rodriguez-Mendez*, 2023 WL 3378005, *4-5 (3d Cir. 2023) (recognizing the Government's argument that Rule 901(a) superseded *Starks* and thus a less rigid authentication standard should apply but finding that because "the government wins under either standard, we need not decide that question."); *United States v. Mondelice*, 2023 WL 2447444, * 2 n.4 (3d Cir. 2023) ("It is unclear whether *Starks* remains relevant after the enactment of Federal Rule of Evidence 901, which 'treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of Rule 104(b).' *United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016). To meet the Rule 104(b) standard, the proponent must show that a piece of evidence is authentic by a preponderance of the evidence. *Id*. Because the Government met the higher 'clear and convincing' standard set forth in *Starks*, we need not address the impact of Rules 104(b) or 901 on *Starks*.").

In response to Defendant Laurel's motion for a *Starks* hearing, the Government notes that Laurel does not specify to which recordings he is referencing, but regardless,

states that it "intends to call [former CI] Verbitsky, the LCDTF undercover officer, and other investigators who can testify about the authenticity and reliability of the audio/visual recording equipment [and that t]hose witnesses will also be able to authenticate and identity speaker's voices in the audio/visual recordings." (Doc. 117, at 24-25) (*see also, id.* at 27 ("the foundational requirements can be met at trial prior to the admission of the audio recordings, through the foundation testimony of Verbitsky, the undercover officer present with the defendant, surveilling officers, and the officers who outfitted Verbitsky and undercover with the audio/visual recordings, retrieved those recordings, and downloaded and saved those recordings.")).

The Court agrees with the Government that a pretrial hearing is not necessary at this juncture of the proceedings. The Court will nonetheless direct Defendant Laurel to inform the Government of any specific recordings whose authenticity and accuracy he seeks to challenge and the Government is directed to provide transcripts to Defendant Laurel of the recordings at issue. At trial, Defendant Laurel is expected to timely raise any objection to the recordings, either pursuant to *Starks*, Rule 901, or other applicable rule, prior to the Government's introduction of any recording the defendant believes is not admissible.

For these reasons, Defendant Laurel's "Motion for *Starks* Hearing to Preclude Use of Audio Recordings at Trial" (Doc. 99) will be denied without prejudice to Defendant timely objecting at trial to any recording which Defendant considers inadmissible or otherwise subject to proper objection.

### III. CONCLUSION

Defendant Russin and Laurel's pre-trial motions (Docs. 99, 102, 106) will thus be denied for the reasons set forth in this Memorandum Opinion.

A separate Order follows.

Robert D. Mariani
United States District Judge